IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 13-622** |
| **JEREL JACKSON** | : | |

**ORDER**

AND NOW, this _____ day of March, 2015, having considered the defendant's Motion to Suppress the Search of [sic] (D.E.#49) and Motion to Suppress Statement/Confession (D.E. #54), and the government's responses thereto, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Suppress the Search of [sic] (D.E.#49) is DENIED; and

2. The defendant's Motion to Suppress Statement/Confession (D.E. #54) is DENIED.

                                    **By the Court:**

                                    _____
                                    **HONORABLE C. DARNELL JONES, II**
                                    **United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v.  : | CRIMINAL NO. 13-622 |
| JEREL JACKSON, :<br>    a/k/a "Jinx" | |

**GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS THE SEARCH OF [SIC] AND MOTION TO SUPPRESS STATEMENT/CONFESSION**

The United States of America, by and through Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Michelle L. Morgan, Assistant U.S. Attorney for the District, hereby responds in opposition to defendant's motion to suppress the search of [sic] (D.E. #49) (relating to a cellular phone) and motion to suppress statement/confession (D.E. #54). For the reasons set forth below, defendant's motions should be denied.

**I. BACKGROUND**

On July 17, 2013, police in Tinicum Township were called to the Red Roof Inn for a domestic disturbance between two females, one of whom was a 17-year-old juvenile who admitted to officers that she was working as a prostitute at the hotel. The adult female accused the juvenile of taking money from her. During the officers' discussions with the females, they learned that the defendant was their pimp. The two were taken to Tinicum Township Police Headquarters for the adult female to give a statement; Sergeant James Simpkins and FBI Special Agent Amy Chandler then took the juvenile home to her father. As a result, Sgt. Simpkins and SA Chandler spent a few

hours with the juvenile, who continued to insist she was 18 even though the officers knew otherwise. The juvenile gave consent for the officers to search her phone, and signed a consent to search form.   In an abundance of caution, the officers had the juvenile's father sign the same consent to search form, as indicated in the police report and FBI 302 previously provided to the defendant in discovery. Because the father did not speak English adequately, a family friend helped to translate as the officers were explaining the form to him. At no point did either the father or the juvenile indicate that the phone belonged to the defendant or to anyone other than the juvenile herself.

   After substantial further investigation, on October 24, 2013, the defendant was arrested by the FBI and taken to FBI headquarters.   FBI Special Agents Jennifer Batish and Michael Goodhue read a Miranda waiver form to the defendant and he signed the form.   The agents then interviewed the defendant, who admitted to being a pimp, transporting the above-referenced juvenile for purposes of prostitution, harboring females for prostitution, and coercing them to engage in prostitution by providing them with narcotics keep them awake and complacent.   He also admitted to being violent toward females.   The two agents are expected to testify that at no point did Jackson appear under the influence of any controlled substance or appear to be incapable of knowingly and voluntarily waiving his Miranda rights.   Jackson appeared to the agents to be lucid, alert, and coherent.

   The defendant subsequently was processed by PreTrial Services, submitted a urinalysis sample, and tested positive for amphetamines, marijuana, and MD3 (commonly known as Ecstacy).[1]

---

1 This is the government's independent recollection of the results of the urinalysis.   Pre-Trial Services has been contacted in relation to this motion response, and will not release the urinalysis

II.   ARGUMENT

    A. <u>**The Search of the Juvenile's Cell Phone Was Conducted Lawfully Pursuant to Valid Consent**</u>.

Defendant first moves to suppress the warrantless seizure and search of the cellular phone possessed by the 17-year-old female working as a prostitute for the defendant.  According to the defendant, the cellular phone "belong[s] to the defendant." Br. 1. Because the juvenile had both actual and apparent authority to consent to the search, and both she and her father consented in writing, the search was lawful.

Where a person with a privacy interest in property, or a person with common authority over property, gives voluntary consent to search, the search is lawful under the Fourth Amendment and no warrant is required.  <u>United States v. Givan</u>, 320 F.3d 452, 459 (3d Cir. 2003); <u>United States v. Stabile</u>, 633 F.3d 219, 231 (3d Cir. 2011). Common authority to consent to a search occurs where a person has joint access or control.  <u>United States v. King,</u> 604 F.3d 125, 137 (3d Cir. 2010) (consent to search shared computer).  Further, a defendant assumes the risk that an item under joint control will be subject to consent by the other party.  <u>Stabile</u>, 633 F.3d at 231 (defendant assumed risk that house cohabitant with joint access, control, and use would consent); <u>United States v. Burton</u>, 193 F.R.D. 232, 241 (E.D. Pa. 2000) (person inside house at time of protective sweep had common authority to consent to search), <u>aff'd</u>, 288 F.3d 91 (3d Cir.), <u>cert. denied</u>, 537 U.S. 1039 (2002). Whether consent was voluntary is analyzed considering the totality of the circumstances. <u>Stabile</u>, 633 F.3d at 231.

Here, the juvenile had actual authority to consent to the search because she had joint access to, use of, and control over the phone. The phone was in her sole possession and solely accessible

---

results or confirm the government's recollection outside of the context of a bail motion without an order from this Court.

to her, while she was staying at a hotel, and while the defendant was nowhere to be seen. Further, the contacts in the phone clearly indicate that she had control over and use of the phone, as the contacts include "Babe Jinx" - - "Jinx" being the defendant's widely known "pimp name" - - with his photograph next to the contact, which contained a cellular phone number known to be utilized by him (as well as a listing for "Babe's Dad" and "Babe's Mom" and his parents' respective phone numbers). Were the phone solely the defendant's, he would have no need to telephone himself.

Further, even absent actual authority, a warrantless search is valid if officers rely in good faith on a person's apparent authority to consent to the search. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990); United States v. Sculco, 82 F.Supp.2d 410, 419 (E.D. Pa. 2000) (defendant sleeping in bed on premises who stated no one else was supposed to be in house had apparent authority to consent to search). Here, given that the juvenile had the telephone in her possession at a time when the defendant was not with her, and gave no indication that the phone was the defendant's and not hers, she had apparent authority to consent to the search of the phone. See also United States v. Rasmussen, slip. op., No. 13-134, 2013 WL 6388460 (D. Minn. Dec. 6, 2013) (search was lawful where, after receiving 911 call, police arrived and met man in driveway who said that phone belonging to defendant, which had been given to him by defendant's stepdaughter, contained child pornography, and showed officer pictures on cell phone).

Defendant argues that any consent given by the juvenile was invalid due to her age. This is incorrect. As articulated by the court in Abdella v. O'Toole:

> Although neither the Second Circuit nor the United States Supreme Court has ruled directly on this issue, a distinct consensus has emerged. It is clear that there is no *per se* rule that all minors lack the authority to consent to a search. Typically, the minority of the consenting party will be merely one of many factors considered when a fact-finder decides the voluntariness of consent.

4

> . . . "As a child advances in age, she acquires greater discretion to admit visitors on her own authority. In some circumstances, a teenager may possess sufficient authority to allow the police to enter and look about common areas."

343 F.Supp.2d 129, 135 (D. Conn. 2004) (emphasis added) (quoting People v. Jacobs, 43 Cal.3d 472, 483 (Cal. 1987)). Thus, in United States v. Juvenile Male, 968 F.Supp. 2d 490, 513-14 (E.D.N.Y. 2013), the court concluded that consent by a juvenile who provided verbal consent to search his home and signed written consent form was given knowingly, voluntarily, and intelligently. Indeed, consents to search by juveniles are commonplace in state cases, where juveniles are routinely charged with crimes. See Commonwealth v. Barnette, 760 A.2d 1166, 1170 (Pa. Super. 2000) (16-year-old, "perhaps mentally retarded" juvenile gave valid, voluntary consent to search of home); In Interest of Jermaine, 582 A.2d 1058, 1063-64 (Pa. Super. 1990) (16-year-old juvenile was sufficiently mature to consent to search of her bag in public rail station; "'Although age is one element to acknowledge in ascertaining whether consent was given willingly, minority status alone does not prevent one from giving consent.'" (citation omitted)). Here, given that the juvenile was 17 years old, was working independently in an arguably mature capacity (albeit unlawfully as a prostitute), and was in sole possession of the phone, she gave valid, voluntary consent to its search.

     Moreover, even if the minor could not provide valid consent, the consent was valid because law enforcement officers took the further step of asking the juvenile's father to sign a written consent form, using the help of a family friend to translate as they explained the form. The officers are expected to testify that the father did not hesitate in signing the form, and gave no indication that the phone belonged to the defendant. Accordingly, for all of these reasons, the consent search was valid and defendant's motion should be denied.

### B. The Defendant's Post-Miranda Statement Was Knowing and Voluntary.

The defendant claims that he was "intoxicated on marijuana and other substances" when he was arrested and questioned, and therefore, his statement was not voluntary. Br. 1. Because the defendant showed no outward signs of intoxication, his motion should be denied.

The government must prove by a preponderance of the evidence that a suspect waived Miranda rights. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). This analysis is one of the totality of the circumstances. United States v. Pruden, 398 F.3d 241, 247-48 (3d Cir. 2005).

Even a defendant who is under the influence of drugs or alcohol can still voluntarily waive his Miranda rights. See United States v. Smith, 606 F.3d 1270, 1277 (10th Cir. 2010) (valid waiver despite defendant's earlier alcohol use because 8.5 hours had passed and defendant appeared sober and said he was); United States v. Carson, 582 F.3d 827, 833-34 (7th Cir. 2009) (valid waiver despite claim of intoxication where defendant appeared alert and coherent); United States v. Gaddy, 532 F.3d 783, 788-89 (8th Cir. 2008) (valid waiver despite defendant's claim of no sleep and of drug and alcohol use where officers testified that defendant appeared lucid and did not advise that he was tired or intoxicated); United States v. Reynolds, 367 F.3d 294, 299 (5th Cir. 2004) (valid waiver despite defendant's claim of amphetamine use and exhaustion where officer testified defendant was compliant, alert, and appropriate); United States v. Palmer, 203 F.3d 55, 60-61 (1st Cir. 2000) (valid waiver despite defendant's heroin withdrawal and use of antidepressants); Clagett v. Angelone, 209 F.3d 370m, 382 (4th Cir. 2000) (waiver was valid despite defendant's intoxication because he did not slur speech or have difficulty walking).

Likewise, physical or mental impairments to not automatically render consent involuntary. United States v. Montgomery, 621 F.3d 568, 574 (6th Cir. 2010 (consent voluntary

6

though nurse administered Morphine to defendant because he remained alert and oriented); United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993) (consent to search voluntary even though given by defendant in emergency room for drug overdose); United States v. Mason, 966 F.2d 1488, 1494 (D.C. Cir. 1992) (consent to search voluntary even though defendant was shot, in hospital, and in considerable pain).

Here, under a preponderance of the evidence standard, the totality of the circumstances make clear that the defendant's waiver was voluntary.   After advising the defendant of his Miranda rights, the agents conducted an interview of the defendant.   The agents who interacted with the defendant are expected to testify that the defendant was lucid and coherent and showed no signs of impairment whatsoever, nor did he state that he was impaired in any way, from the time of his arrest and through the conclusion of his interview and their involvement with him on October 24, 2013. Accordingly, and in view of the case law referenced above, the defendant voluntarily waived his rights, and his motion should be denied.

### III.	CONCLUSION

For the reasons set forth above, the government respectfully requests that defendant's motion to suppress the search of [sic] (relating to the cellular phone) and motion to suppress statement/confession should be denied.

> Respectfully submitted,
>
> ZANE DAVID MEMEGER
> United States Attorney
>
> ___/s/ Michelle L. Morgan_____
> MICHELLE MORGAN
> Assistant United States Attorney

7

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the government's response in opposition to defendant's motion to suppress the search of [sic] and motion to suppress statement/confession, and proposed order, to be served by electronic mail or U.S. Mail, to the following counsel of record:

Thomas F. Burke, Esq.
Borum Burke & Didonato LLC
Two Penn Center Plaza
1500 JFK Boulevard, Suite 900
Philadelphia, PA   19102


_____/s/ Michelle L. Morgan_____
MICHELLE L. MORGAN
Assistant United States Attorney

Date: March 2, 2015