IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA     **:**

             **V.**           **:**     **CRIMINAL NO. 13-622**

     **:**

     **:**

**JEREL JACKSON**

_____

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant JEREL JACKSON, by and through his undersigned counsel, Thomas F. Burke, Esquire, hereby submits this memorandum in mitigation of his sentence in this matter.

**I.**      **FACTS**

The defendant adopts the facts as set forth at his change of plea hearing on March 18, 2015.

**II.**     **SENTENCING FLEXIBILITY IN THE POST-*BOOKER* ERA**

**A.**     **The Advisory Sentencing Guidelines.**

On January 12, 2005, the United States Supreme Court ruled that its holdings in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey,* 530 U.S. 466 (2000) applied to the U.S. Sentencing Guidelines and, therefore, the Sentencing

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

Guidelines violated the Sixth Amendment of the United States Constitution. *United States v. Booker*, 543 U.S. 220, 244 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statute in *Blakely* and the sentences imposed pursuant to the federal sentencing guidelines" in the cases before the Court. *Id.* at 235. Accordingly, reaffirming its holding in *Apprendi,* the Court concluded that "[a] any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proven to a jury beyond reasonable doubt." *Id.* at 244.

Significantly, based on this conclusion, the Court further found that those provisions of the Federal Sentencing Reform Act of 1984 which make the Guidelines mandatory, that is, 18 U.S.C. §3553(b)(1), or which rely upon the Guidelines' mandatory nature, that is, 18 U.S.C. §3742(c), are incompatible with its Sixth Amendment holding. *Booker, 543* U.S.C. at 244. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id* at 245. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act as revised by *Booker* "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well" as articulated in 18 U.S.C. §3553(a). *Booker*, 543 U.S. at 245-46 (citations omitted). Thus, under *Booker*, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a). See *United States v. Coleman*, 451 F.3d 154, 158 (3d Cir. 2006) ("[T]he Guidelines' recommended range may be modified or disregarded by a district

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

court upon consideration of the other sentencing factors Congress has identified in §3553 (a)").

In the Third Circuit, district courts considering the appropriate sentence for a criminal defendant must "follow a three-step sentencing process:"

>   (1)   Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker,*
>
>   (2)   In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guideline calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force;
>
>   (3)   Finally, they are required to exercise their discretion by considering the relevant §3553(a) factors...in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter,* 462 F.3d 237, 247 (3d Cir. 2006)(citations omitted).  Thus, in the critical third *Gunter* step, the district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, whether or not that judgment results in a sentence within the advisory range. In fact, the district court must give "meaningful consideration to the section 3553(a)(2) factors" and impose sentence for reasons that are logical and consistent with those factors; however, the Third Circuit has rejected any presumption that sentences should be imposed within guideline range. *United States v. Cooper,* 437 F 3d 324, 329-330 (3d Cir. 2006).

### B.     Guidelines Are Not Presumptively Reasonable

A sentence within the Sentencing Guidelines range for the defendant would be unreasonable because such a sentence would fail to appropriately consider the

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

defendant's personal history and characteristics pursuant to 18 U.S.C. §3553(a)(1). This Court is not bound by the Sentencing Guidelines and, instead, pursuant to 18 U.S.C. §3553(a), has the authority to impose any sentence which is "sufficient, but not greater than necessary," to comply with the traditional goals of sentencing.

In *United States v. Rita*, 2007 WL 1772146 (U.S., June 21, 2007), the United States Supreme Court was faced with the question of whether Circuit Courts should adhere to a presumption of reasonableness when deciding on direct appeal, whether a sentencing judge appropriately applied the guidelines. The Supreme Court held that, on appeal, Circuit Courts "may afford a presumption of reasonableness to a within-guidelines sentence." *Rita* at 6 (emphasis added). The Supreme Court clearly stated that such a discretionary presumption does not apply to sentencing courts. *Id* at 9. "The presumption [of reasonableness for a Guidelines sentence]...is an appellate court presumption... In determining the merits of.... [sentencing] arguments, the sentencing court does ***not*** enjoy the benefit of a legal presumption that the Guidelines should apply." *Rita* at 9. (emphasis added).

In fact, the *Rita* decision clearly maintains that district courts, when imposing a sentence, do not have a subordinate role to the Commission, do not have to defer to the Commission's judgments and policy decisions, and can reach their own judgments regardless of whether they disagree with the commission's position. *Rita* at 7. The district court may therefore determine that a guideline sentence:

> [s]hould not apply because the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, ...because the Guidelines sentence itself fails to properly reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

*Rita* at 9.  For example, the sentencing court must address arguments that the Sentencing

Guidelines "reflect an unsound judgment or...that they do not generally treat certain

defendant characteristics in the proper way."  *Rita* at  12.  The *Rita* Court even states that,

"[a]s far as the law is concerned, the [sentencing] judge could disregard the Guidelines."

*Rita* at 10.

        In *Rita,* the Supreme Court did not overrule the Third Circuit's holding in

*United States v. Cooper;* in fact, the *Rita* and *Cooper* decisions are consistent.  In

*Cooper*, the Third Circuit stated that "[a]lthough a within-guideline range sentence is

more likely to be reasonable than one that lies outside the advisory guideline range, a

within-guidelines sentence **is not necessarily reasonable per se**."  *United States v.*

*Cooper*, 437 F.3d 324, 331 (3d Cir. 2006)(emphasis added).  Thus the Cooper court

rejected the notion that a within-guidelines sentence is presumptively reasonable because

that would "come close to restoring the mandatory nature of the guidelines."  *Id.*

Similarly, in *Rita*, the Supreme Court held that the presumption of reasonableness is

"non-binding" and has no "independent legal effect."  *Rita* at 6.  Simply put, the

reasonableness presumption applies on direct appeal and, at the sentencing stage, after

considering the Guidelines and the §3553(a) factors, the district court is free to decide

that the statutory factors trump the Guidelines.

        In his concurring opinion in *Rita*, Justice Stevens stated that "...as a

practical matter, many federal judges continue to treat the Guidelines as virtually

mandatory after our decision in *Booker*...[G]iven the clarity of *Rita's* holding, I trust that

those judges who have treated the Guidelines as virtually mandatory during the Post-

*Booker* interregnum will now recognize that the Guidelines are truly advisory." *Rita* at

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

13.  In every case, a sentencing court must now consider all of the §3553(a) factors, and not just the Sentencing Guidelines as set forth in §3553(a)(4)(A), to determine a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing.  Where the guidelines conflict with other sentencing factors articulated in §3553(a), these other statutory sentencing factors should generally take priority over the Guidelines.  See *United States v. Denardi*, 8892 F2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (arguing that since 3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, the imposition of a sentence greater than necessary to meet those purposes violated the statute and is reversible even if within the guideline range).

### C.    The Directive and Factors Embodied in 18 U.S.C. §3553(a)

The primary directive in 18 U.S.C. §3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of §3553(a)."  Section 3553(a)(2) states that these purposes are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and,
>
> (D)   to provide the defendant with needed educational of vocational training, medical care, or other correctional treatment in the most effective manner.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

18 U.S.C.  §3553(a)(2).  Of course, these §3553(a)(2) factors are simply a restatement of the traditional goals of sentencing of retribution, deterrence, the protection of society, and rehabilitation. These goals, formerly relegated to an afterthought by the U.S. Sentencing Commission, have been reinvigorated by the Supreme Court in *Booker*.

In determining a sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

(1)  "the nature and circumstances of the offense and the history and characteristics of the defendants," see 18 U.S.C. §3553(a);

(2)   "the kinds of sentences available," *see* 18 U.S.C. §3553(a)(3);

(3)   "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *see* 18 U.S.C. §3553(a)(6); and

(4)   "the need to provide restitution to any victims of the offense; see 18 U.S.C. §3553(a)(7).

This is not an exhaustive list of the factors which the Court can consider.  Indeed, pursuant to 18 U.S.C. §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

### III. DETERMINING AN APPROPRIATE SENTENCE FOR JEREL JACKSON

### A.   Introduction

Pursuant to the Third Circuit's ruling in *United States v. Gunter*, at sentencing, district courts should (i) conduct a sentencing guidelines analysis;  (ii) formally rule on the motions of both parties, including requests for downward departures; (iii) exercise the sentencing court's discretion by considering the relevant section §3553 factors to impose an appropriate sentence regardless of whether it varies from the sentence calculated under the guidelines. 462 F.3d 237, 247 (3d Cir. 2006) (citations omitted).

### B.   Sentencing Guideline Calculation for JEREL JACKSON

### 1.   Offense Level Computation

The probation department calculated the total offense level for Count One at 40. 34 for the base offense level, two additional points under §2G1.3(b)(1)(B) for a victim being under the care and custody of the defendant, two additional points for use of a cell phone with internet capabilities to post pictures, and two more points the commission of a sex act.  The defense has objected to the enhancement under §2G1.3(b)(1)(B).  For this enhancement to apply, according to the commentary section of the Sentencing Guidelines, the care of the victim under the age of 18 must have been "entrusted to the defendant whether temporarily or permanently".  The Guidelines then list several examples such as teachers, day care workers, baby-sitters or other temporary care givers. The Guidelines further direct sentencing courts to "look to the actual relationship that existed between the defendant and the minor, and not simply the legal status of the defendant minor relationship".  Here, Jerel Jackson had no "care-giver" responsibilities to

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

any of the minor victims.  Accordingly, the total offense level for Count One should be 38.

The defense had no objections to the offense calculation for Counts Two and Three.  On Count Four, the probation department calculated the total offense level at 36. This included a base offense level of 34, and a two-point enhancement under §3C1.1 for Obstruction.  The defense objected to this enhancement because the actual statement to the witness does not constitute obstruction under the Guidelines.  Under the commentary section to §3C1.1, the kinds of conduct covered by this section include "threatening, intimidating or otherwise unlawfully influencing a witness".  The statement by the defendant to the witness is as follows: "They trying to say that you was [sic] working for me or whatever the situation was, and of course that's not true and I already told them that's not true; they trying to give me life for behind this shit . . . this ain't no game . . . I ain't made nobody do shit . . . my guess is that they gonna subpoena you all . . . the prosecutor says she has five witnesses who will say I forced them  . .  I got superseded . . . .I already had my case beat 'til they added you all on. . . you ain't never worked for me period."  In none of those words can a threat be detected, nor is the defendant directing the witness to testify in a certain way.  The defendant is denying his guilt.  Accordingly, this enhancement should not apply and the base offense level should be 34.  Also, for Count Five, the total offense level has been erroneously calculated at 40.  For Count Five, the probation department again assessed two points under §2G1.3(b)(1)(B) (care or custody of minor).  As stated above, the defendant never had a "care-giver" relationship with the victims and this enhancement should not apply.  Also, the probation department again assessed two points for obstruction under §3C1.1.  As stated above, this

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

enhancement should not apply and the total offense level  for Count Five should be 38, not 42.

Since the greatest offense level is 38, and not 42, four points are properly added under the grouping provisions under §3D1.4 for a score of 42.  The defendant properly received a two-point reduction for acceptance of responsibility and the final total offense score is 40.

**2**.        **Criminal Offense History Calculation**

The defense does not object to the criminal offense history calculation included in the presentence report. The defendant is in category five

**3.        Guideline Range**

Pursuant to U.S.S. G. Chapter 5, Part A, based on a total offense level of 40 and a criminal history category of V, the guidelines range for imprisonment is 360 to life imprisonment.

**C.  Personal and Family Background of the Defendant**

The defendant's background and personal history were appropriately outlined in the pre-sentence report.

**The Appropriate Sentence for Jerel Jackson**

The defendant stands before this Court having pled guilty to sex trafficking. While the Court is required to consider the guidelines and mandatory minimums in imposing sentence on the defendant, the Court must also be mindful of the factors set forth in 3553(a)(2), which states that in addition to providing just punishment, deterrence of future crimes as well as protection of the public, the Court must also provide needed

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

educational and vocational training, medical care or other correctional care as needed.

It is said that the lawyer carries the baggage of his client. It would be difficult to argue for a downward departure or variance of any kind on behalf of Jerel Jackson given his past. Certainly, the crimes to which he admitted are disturbing and serious, and also warrant a stiff sentence from the Court. However, the request by the government for a life sentence, even under these circumstances, is excessive. A life sentence should only be reserved for the most dangerous of persons; killers; those who have proven themselves to be unable to live in society because of violent nature of their being. Despite Jerel Jackson's crimes, he does not meet this criteria. Furthermore, a request for a life sentence by the government assumes that the federal prison system can offer no help whatsoever at rehabilitating the defendant. It also ignores the 3553(a) directives. Certainly, a long prison sentence will ensure protection of the public and deterrence as well as promote respect for the law. But a life sentence completely ignores the need to provide needed educational, vocational and correctional treatment. A man in prison for the rest of his life does not need these things. Finally, in the recent words of Pope Francis, a life sentence "is a hidden death penalty because the defendant is there without hope of liberation." On behalf of the Jerel Jackson, the defense requests that the Court reject outright the government's request for a life sentence, and frame a sentence that adequately meets all the 3553 factors.

**IV. CONCLUSION**

Based on all of the above-factors, Mr. Jackson respectfully requests that this Court frame a sentence that adequately meets all the 3553 factors.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

Respectfully submitted,

  __/s/  **_Thomas F. Burke_**__

Thomas F. Burke, Esq.

Attorney for Defendant

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)