IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Criminal No. 13-622 |
| | : | |
| | : | |
| JEREL JACKSON | : | |

**DEFENDANT'S POST-APPEAL SENTENCING MEMORANDUM**

  Having previously received a sentence of 360 months in this matter, Jerel Jackson now returns to appear before this Court for a new sentencing following a remand from the United States Court of Appeals. As a result of the determination in the Third Circuit, his applicable sentencing guideline range has been changed from life to a range of 360 - life. This Court varied downward from the previous guideline range on the first occasion of Mr. Jackson's sentencing and it is respectfully urged that the Court do so again.

  Mr. Jackson's offenses in this matter are egregious. The government may take exception to the degree of his acceptance of responsibility, but he did accept responsibility and pled guilty in this matter. As the government's sentencing memorandum declares, he admitted to his conduct on two occasions prior to his guilty plea. A substantial part of his motivation for waiving his right to a trial was to spare the young women who were the victims of his offenses from having to testify.

  The government has detailed the nature and circumstances of Mr. Jackson's offenses and has listed the numbers regarding his prior contacts with the criminal justice system including the numbers of adjudications and convictions. These prior offenses have involved the possession of firearms, street-level drug sales, and thefts. There is little of his extrajudicial history that appears

in the government's memorandum.

Jerel Jackson started life as the only child of a sixteen-year-old mother and an incarcerated father. His mother later had four other children with different fathers. Jerel did not meet his father, until the latter was released from prison, when Jerel was 17 years old. He describes himself as a difficult child to parent. He was out in the streets on his own. School was not really a part of his life.[1] It is no surprise then that his first documented contact with the Philadelphia Police Department was at the age of 13. His first adjudications came when he was 14 years old – one related to a stolen auto and one due to possession of a controlled substance. Less than 16 months later he was charged and adjudicated in two felony drug cases. He was committed to St. Gabe's in February 2002 and remained there until January 2003. It was during that time period that he received the greatest amount of schooling in his childhood. Unfortunately (and perhaps tellingly) he was unable to meet the GED requirements during that time. Mr. Jackson's subsequent adult convictions included a felony drug conviction, two gun possession offenses, and two theft cases. His longest previous sentence was for not less than two years to not more than four years in a state correctional facility.

Mr. Jackson by his own admission has not had legal employment. It does not take much calculation to look at the paucity of education and perhaps positive parental supervision as possible causes. Under such circumstances the lessons about what is right and what is wrong are too few and far between.

None of this is offered as excuse for his egregious conduct. It must, however, be considered under the prescriptions of 18 U.S.C. § 3553(a) in fashioning the appropriate sentence.

---

[1] The Presentence Investigation Report prepared on June 24, 2015, and submitted to the Court, does not even mention at what schools Mr. Jackson was enrolled, let alone what his attendance record was.

Arguing that thirty years is an appropriate sentence and necessary to protect the public from future crimes of the defendant is akin to saying that rehabilitation is impossible. Punishment, fostering respect for the law, and deterrence can be accomplished in this case with a sentence of far less than thirty years. There has to be concern about what will happen, when Mr. Jackson is released in his fifties with no job history, little education, and no available Social Security benefits. Rehabilitation is society's only real hope here and a sentencing decision that recognizes that is crucial. It is hoped that educational and occupational deficits can be overcome through proper programming in the prison and that Mr. Jackson could be released in his forties, when he still has a chance to become a productive member of society.

                Respectfully submitted,

                Mark Wilson
                Assistant Federal Defender