IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 2:13-cr-00622-JDW |
| | : | |
| v. | : | |
| | : | |
| JEREL JACKSON | : | |

### MEMORANDUM

Ever since Jerel Jackson entered an open plea as to five charges of sex trafficking in March 2015, he's been trying to get a do-over. Now, on his third attempt to undo his conviction, Mr. Jackson points the finger at two of his court-appointed attorneys, alleging that they were constitutionally deficient. However, the record reveals that Mr. Jackson's claims are baseless, and he is not entitled to post-conviction relief.

**I.    BACKGROUND**

    **A.    Pre-Trial Proceedings, Guilty Plea, And Appeal**

On November 14, 2013, a grand jury returned a three-count indictment against Mr. Jackson, charging him with sex trafficking of three individuals, one a minor, in violation of 18 U.S.C. §§ 1591 and 1594(a). The Court appointed Gavin Holihan, Esq. to represent him. In September 2014, Mr. Jackson requested new counsel, and Judge C. Darnell Jones II, appointed Thomas Burke, Esq. to represent him. In January 2015, a grand jury returned a superseding indictment against Mr. Jackson. It issued a second superseding indictment against him on February 5, 2015, charging him with five counts of sex trafficking. Trial was scheduled to begin on March 18, 2015.

In the meantime, Mr. Burke filed various pre-trial motions on Mr. Jackson's behalf, including a motion to compel the early production of Jencks Act materials, a motion to suppress the search of Mr. Jackson's cell phone, and a motion to suppress Mr. Jackson's confession to police. On March 16, 2015, during a hearing on various pre-trial motions, Mr. Burke moved to continue the trial. Judge Jones denied the motion. The next day, Judge Jones denied both of Mr. Jackson's motions to suppress. Trial was set to begin the following morning. However, Mr. Jackson decided to plead guilty.

On March 18, 2015, "after a thoughtful and extensive plea colloquy with the District Court, [Mr.] Jackson pleaded guilty to the five-count second superseding indictment" and "confirmed that he wanted to enter a guilty plea and that he was making that decision of his own free will because he was guilty." *United States v. Jackson*, 712 F. App'x 141, 142–43 (3d Cir. 2017). Judge Jones entered his findings on the record, including the fact that Mr. Jackson's guilty plea was knowing and voluntary.

In both July and October 2015, Mr. Jackson requested new counsel, and Judge Jones appointed a new attorney in November 2015. In May 2016, before sentencing, Mr. Jackson filed a motion to withdraw his guilty plea, asserting that he was innocent of all charges against him and arguing that he felt coerced into pleading guilty because he felt rushed to trial after the jury returned the second superseding indictment. Judge Jones denied the motion and sentenced Mr. Jackson to 30 years' imprisonment and 5 years of supervised released.

Mr. Jackson appealed, arguing that: (1) the District Court abused its discretion by denying the motion to withdraw his guilty plea; and (2) his sentence was improperly calculated. Mr. Jackson also claimed that his counsel was constitutionally ineffective, but the Third Circuit declined to review the merits of that claim, reasoning that this Court should address any alleged ineffectiveness claims in the first instance. *See Jackson*, 712 F. App'x at 143. The Third Circuit affirmed Judge Jones's denial of Mr. Jackson's motion to withdraw his guilty plea, but it vacated the sentence and remanded for resentencing after finding that the court erred in calculating the applicable sentencing range. On remand, Judge Jones re-sentenced Mr. Jackson to 25 years' imprisonment and 5 years' supervised released.

B.  **Section 2255 Motion**

On September 3, 2020, Mr. Jackson filed a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, along with a supporting declaration. In his motion, Mr. Jackson asserts five ways that he contends his trial counsel was ineffective, including the failure to: (1) pursue a motion to suppress the arrest warrant based on false evidence; (2) pursue a motion for discovery of cell phone evidence in the Government's possession; (3) pursue a motion to dismiss the indictment as unconstitutionally vague; (4) ensure that the guilty plea was not the product of duress and coercion and was not based on erroneous advice about Mr. Jackson's sentencing exposure; and (5) move to dismiss at the probable cause hearing. The same day Mr.

Jackson filed his 2255 motion, his current counsel moved for admission *pro hac vice*. After the Government filed its opposition to the motion, Judge Jones granted the *pro hac vice* motion, and Mr. Jackson's counsel filed a declaration in further support of the motion.

Almost two years later, this matter was reassigned to me. Upon reviewing the relevant filings, I noticed that Mr. Jackson's counsel did not have an opportunity to file a brief at the time Mr. Jackson filed his 2255 motion because his *pro hac* application remained pending. Therefore, I gave both Parties the opportunity to file supplemental briefs in this matter. With those briefs on file, Mr. Jackson's motion is ripe for review.

## II.     LEGAL STANDARD

28 U.S.C. § 2255(a) permits a prisoner serving a federal sentence to move the sentencing court to "vacate, set aside, or correct the sentence" where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief pursuant to Section 2255(a), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quotation omitted). This heightened standard reflects "the great interest in finality of judgments," which "has special force with respect to convictions based on guilty pleas." *Id.* (same).

Section 2255(b) requires a district court to hold a hearing to resolve the issues and make factual findings and legal conclusions on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). In determining whether a hearing is warranted, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The district court need not investigate a movant's claims based on "vague and conclusory allegations." *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). However, if the movant alleges any non-frivolous facts that, accepted as true, would warrant relief under Section 2255(a), then the court must hold an evidentiary hearing to resolve the motion. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

## III. DISCUSSION

Each of Mr. Jackson's grounds for relief asserts the alleged ineffective assistance of two of his attorneys leading up to his guilty plea. As a result, the familiar standard from *Strickland v. Washington*, 466 U.S. 668 (1984) governs all of Mr. Jackson's claims. Under *Strickland's* two-part inquiry, Mr. Jackson "must show that counsel's performance was deficient" by demonstrating that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In addition, Mr. Jackson "must show that the deficient performance prejudiced the defense." *Id.* To make this showing in a case involving a guilty

plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A.   Undeveloped Or Abandoned Claims

At least two of Mr. Jackson's claims of ineffective assistance of counsel do not warrant a hearing because Mr. Jackson failed to present any argument or evidence to support them. In his motion, Mr. Jackson asserts—in conclusory fashion—that counsel was ineffective for failing to pursue a motion for discovery of cell phone evidence from the Government and for failing to pursue a motion to dismiss the indictment as unconstitutionally vague.[1] However, aside from listing these grounds for relief in his motion, Mr. Jackson does not expand upon them in any of his submissions. Mr. Jackson's declaration, his counsel's declaration, and his supplemental brief are all silent on these issues. (*See generally* ECF Nos. 189, 197, 203.) Where there is no argument or evidence as to these claims of ineffective assistance, Mr. Jackson has not demonstrated that relief is

---

[1]   On direct appeal, Mr. Jackson argued that trial counsel had been ineffective for failing to pursue a motion to dismiss the indictment as unconstitutionally vague. However, neither Mr. Jackson nor his present counsel briefed this issue as part of this motion or even tried to incorporate by reference appellate counsel's prior briefing on this issue.

warranted, and I need not investigate further based on his conclusory allegations. *See Thomas*, 221 F.3d at 437.

Even if I were to consider these issues, there does not appear to be a basis to grant relief. With respect to the cell phone, the Government has represented that it produced the contents of "Person 1's" cell phone in discovery to Mr. Jackson's first attorney on November 25, 2013, and then it re-produced those materials to his second attorney on October 6, 2014. Thus, even if Mr. Jackson had developed this claim, it would likely fail. Because his counsel had the cell phone evidence, Mr. Jackson could never demonstrate that he suffered any prejudice from not having it. Nor does there appear to be any problem with the Second Superseding Indictment that would render it unconstitutionally vague—a determination I can make from reviewing the document, without need for a hearing. Thus, neither one of these alleged claims would have prevailed, had Mr. Jackson developed them.

### B.      Claims Related To The Guilty Plea

#### 1.      Alleged Failure To Ensure That The Guilty Plea Was Not The Result Of Coercion Or Duress

Mr. Jackson is not entitled to relief on his first claim of ineffective assistance of counsel related to his guilty plea because Judge Jones determined that Mr. Jackson's plea was knowing and voluntary, and the Third Circuit affirmed this finding on appeal. Following a "thoughtful and extensive plea colloquy," Judge Jones made the following factual findings:

7

> The Court finds that the defendant is fully alert, competent, and capable of entering an informed plea. The plea is knowing and voluntary and not the result of force or threats or any promises.
>
> ***
>
> The defendant understands the charges, his legal rights, and the maximum possible penalties involve[d] herein, and the defendant understand[s] that he is giving up his right to a trial.

(JA at 147.[2]) Nevertheless, Mr. Jackson filed a motion to withdraw his guilty plea, asserting that he felt coerced into pleading guilty. Judge Jones denied the motion and determined that Mr. Jackson's asserted reasons for wanting to withdraw his guilty plea, including any alleged coercion, were "lacking in factual and legal merit[.]" (JA at 11.) On appeal, the Third Circuit affirmed these findings, resolving the issue of whether Mr. Jackson's guilty plea was knowing and voluntary. Mr. Jackson cannot challenge that factual determination now. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion[.]") (citing *United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir.1993)).

Because Judge Jones and the Third Circuit have ruled that the plea was fair and not a product of coercion, Mr. Jackson cannot relitigate that issue in the guise of ineffective assistance of counsel. Because Mr. Jackson's guilty plea was knowing and voluntary, his counsel cannot have been ineffective for failing to ensure that it was, and there can be no prejudice from this alleged failure. That doesn't mean he can't raise any ineffective

---

[2] All citations to "JA" and "JSA" refer to the Joint Appendix and the Joint Supplemental Appendix filed with the Third Circuit on direct appeal, respectively.

assistance of counsel claims. It just means he can't take issues that have already been resolved, dress them up as ineffective assistance of counsel, and raise them again.

### 2. Alleged Failure To Prevent Mr. Jackson From Pleading Guilty

Mr. Jackson cannot prevail on his claim that his attorney should not have permitted him to enter a guilty plea "knowing that Judge Jones violated a Supreme court ruling and a 6th Amendment Speedy trial right amended in 1979 to ensure defendants weren't rushed to trial without an adequate time to prepare …." (ECF No. 189 at Page 18 of 18.) The Speedy Trial Act provides that "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days *from the date on which the defendant first appears through counsel* or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2) (emphasis added). Given this "unambiguous language," the Supreme Court has held that the 30-day trial preparation period does not "recommence" from the date of filing of a superseding indictment. *United States v. Rojas-Contreras*, 474 U.S. 231, 234, 235 (1985); *see also United States v. Kamerud*, 326 F.3d 1008, 1014 (8th Cir. 2003) ("The Speedy Trial Act does not require that the 30–day trial preparation period be restarted upon the filing of a superseding indictment."). Thus, there is no merit to the argument that Judge Jones violated the Speedy Trial Act by refusing to continue Mr. Jackson's trial after the grand jury returned the second superseding indictment. Because Judge Jones didn't violate the Speedy Trial Act, Mr. Jackson's counsel could not have been ineffective for permitting him to plead guilty in light of this non-

violation. *See Bui*, 795 F.3d at 366-67 (3d Cir. 2015) ("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (quotation omitted).

### 3. Alleged "Misadvisement" Of Sentencing Exposure

Mr. Jackson cannot prevail on his ineffective assistance claim based on counsel's alleged "misadvisement" as to his possible sentencing exposure because he does not explain how his counsel misadvised him or how he was prejudiced as a result. According to Mr. Jackson, his attorney told him that he "would get life if [he] was found guilty[,] which [he] would be because [the attorney] did not have an adequate time to prepare to late superseding charges …." (ECF No. 189 at p. 15 of 18.) As a result, his attorney advised him to plead guilty and "throw [himself] to the mercy of the court and try to get a lesser sentence …." (*Id.* at p. 17 of 18.) At sentencing, Judge Jones calculated the total possible sentence as a mandatory minimum term of 15 years, with a maximum term of life in prison. (JA at 185-86.) Initially, Judge Jones varied downwards and sentenced Mr. Jackson to 30 years' imprisonment. On remand, Judge Jones calculated a revised Guidelines range of 360 months to life and granted a downward variance to 25 years.

Mr. Jackson offers no explanation as to how his counsel "misled" him as to the sentencing calculation, given that Judge Jones calculated that he could receive a maximum sentence of life in prison, consistent with counsel's advice. In addition, Mr. Jackson cannot demonstrate that he was prejudiced by taking counsel's advice to plead

guilty to get less than a life sentence because Judge Jones did just that and sentenced him to 30 years and then 25 years on remand.

Finally, Mr. Jackson's ineffectiveness claim based on alleged faulty sentencing advice fails as a matter of law. The Third Circuit has made clear that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where … an adequate plea hearing was conducted." *Bui*, 795 F.3d at 367 (quotation omitted). During the plea colloquy, Judge Jones made clear that none of the Parties could bind him as to a sentence to impose, and he made sure that Mr. Jackson understood that no one could guarantee what sentence he would receive from the Court. Judge Jones also advised Mr. Jackson that Mr. Jackson could receive the maximum sentence permitted by law, which was life in prison, and he made clear that he could depart from the Guidelines and impose a sentence which could be more or less severe than what the Guidelines recommended. Mr. Jackson confirmed his understanding of all of this during the colloquy. Thus, Judge Jones's detailed in-court plea colloquy (which accurately explained Mr. Jackson's sentencing exposure) corrected any incorrect information that Mr. Jackson's counsel might have provided. *See, e.g.*, *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007). Therefore, Mr. Jackson cannot succeed on this claim.

### C. Claims Related To Probable Cause

Mr. Jackson cannot prevail on his ineffectiveness claims based on his initial counsel's alleged failure to pursue a motion to suppress the arrest warrant based on false

evidence and alleged failure to move to dismiss at the probable cause hearing because those claims are based on Mr. Jackson's misreading or misunderstanding of the affidavit supporting the arrest warrant in this case. In asserting this claim, Mr. Jackson contends that someone named Claribel never gave any statements to Detective Jordan Miller with the Dover Police Department, yet the arrest warrant includes false information that she did give such a statement. Mr. Jackson is wrong. The affidavit supporting his arrest warrant does not claim that any of the confidential witnesses provided a statement to Detective Miller.[3] Rather, the affiant——FBI agent Jennifer Batish——stated that she interviewed three confidential witnesses and Detective Miller. Nothing in the affidavit claims that Claribel gave a statement to Detective Miller. Thus, his counsel was not deficient for failing to suppress the arrest warrant on this basis. *See Bui*, 795 F.3d at 366-67 (3d Cir. 2015) ("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (quotation omitted).

To the extent Mr. Jackson claims that Agent Batish fabricated Claribel's statements and that his counsel should have moved to suppress the arrest warrant on that basis, that claim would fail as well because there was still ample probable cause to support the arrest warrant. "Probable cause exists if there is a 'fair probability' that the person committed

---

[3] Though the record is not definitive on this point, it appears that "Claribel" is "Confidential Witness #2," or "CW2," in Agent Batish's affidavit. (*See* ECF No. 192 at 17.)

the crime at issue." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quotation omitted).

Aside from Claribel, the affidavit contains information from two other confidential witnesses, both of whom told Agent Batish that Mr. Jackson prostituted them in Philadelphia and Delaware and used violence against them. The affidavit also includes the fact that Detective Miller encountered Mr. Jackson with four women at a hotel in Dover, Delaware, on April 29, 2013, and that Mr. Jackson told him that he drove the women to the hotel and provides "protection" for them. (ECF No. 1 at p. 4 of 6.) In addition, hotel records show that one room was reserved under Mr. Jackson's name, with the adjacent room registered under the name of one of the women who was present. One of the confidential witnesses permitted the FBI to search her cell phone, which included pictures of all three confidential witnesses and other women posing nude or in lingerie. Agent Batish viewed some of those same pictures in ads posted on [www.backpage.com](www.backpage.com). Additional ads on Backpage included the same women, and a subscriber with Mr. Jackson's Philadelphia address and/or name posted some of the ads. The search of the confidential witness's phone also included pictures and videos of Mr. Jackson, one of which depicted Mr. Jackson "tryin' to show off," while holding cash in a hotel room with three women wearing lingerie. (*Id.*)  Thus, even if Mr. Jackson were correct that Claribel never gave a statement to Agent Batish, the supporting affidavit nevertheless contains enough evidence to establish probable cause that he committed a violation of 18 U.S.C. §

1591. Indeed, this is likely the reason why Mr. Jackson's original counsel told him that "there was no point in challenging the warrant." (ECF No. 189 at p. 15 of 18.)

To the extent that Mr. Jackson also intends to argue that his subsequent counsel was ineffective for failing to call Claribel as a witness during the suppression hearing, that claim is without merit. *First* and foremost, Mr. Jackson has not demonstrated that he suffered prejudice from this alleged failure. He has not explained what Claribel would have said or how her testimony would have impacted the suppression hearing or his decision to plead guilty. That fact, alone, dooms his claim. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Second*, given Agent Batish's sworn affidavit setting forth that Claribel had provided information against Mr. Jackson, it was not unreasonable for Mr. Jackson's counsel to be wary of calling her as a witness. "The decision regarding which witnesses to call is an inherently strategic decision which is left to the control of defense counsel." *United States v. Franklin*, 213 F. Supp. 2d 478, 486 (E.D. Pa. 2002) (citation omitted). Thus, defense counsel's decision as to which witnesses to call will be found "deficient only if they demonstrate a lack of preparation, ineptitude, unfamiliarity with basic legal principles or were made without any communication with the defendant." *Id.* (same). Mr. Jackson cannot make the necessary showing where he concedes that his counsel consulted with him about calling Claribel as a witness but then made the strategic decision not to call

her because "he couldn't trust her" due to the fact that Agent Batish claimed that Claribel made statements against Mr. Jackson. (ECF No. 189 at Page 18 of 18.) Where, as here, counsel's decision is the product of a strategic litigation choice, counsel's representation is not deficient. *See United States v. Haisten*, 50 F.4th 368, 372 (3d Cir. 2022).

## IV.     CONCLUSION

I will deny Mr. Jackson's motion without having a hearing because Mr. Jackson's claims of alleged ineffective assistance of counsel are based on undeveloped, conclusory allegations or are frivolous considering the existing record. Furthermore, because Mr. Jackson cannot show that he was denied his Sixth Amendment right to effective assistance of counsel, and no reasonable jurist would debate that finding, I will not issue a certificate of appealability. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Joshua D. Wolson, J.

May 3, 2023